UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
AURELIO GOODEN,

                Plaintiff,                     **MEMORANDUM AND ORDER**
                                                              21-CV-6313 (RPK) (SJB)

    v.

JOSEPH P. ADDABBO FAMILY
HEALTH CENTER, INC.,

                Defendant.
-----------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

        Plaintiff Aurelio Gooden, who is proceeding *pro se*, brought this complaint raising claims of discrimination and retaliation against his former employer, defendant Joseph P. Addabbo Family Health Center, Inc., after defendant fired him in April 2021. Defendant moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, plaintiff's complaint is dismissed.

## BACKGROUND

        The following factual allegations are taken from the amended complaint. Plaintiff's papers opposing the motion to dismiss have also been considered when helpful to clarify the pleadings. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013); *Milano v. Astrue*, No. 05-CV-6527 (KMW) (DF), 2007 WL 2668511, at *2 (S.D.N.Y. Sept. 7, 2007).

    **A.  Factual Background**

        Defendant hired plaintiff, a black man, as its Director of Human Resources on October 17, 2016. Am. Compl. ¶¶ 7, 52, 105 (Dkt. #17). In that role plaintiff reported directly to Addabbo's then-CEO, Dr. Marjorie Hill. *Id.* at ¶ 7. A few months later, in March 2017, the company's CFO resigned, and Addabbo hired Mike Mikulski as its interim CFO, a role he filled for the remainder of plaintiff's time at Addabbo. *Id.* at ¶ 9.

During Mikulski's tenure as CFO, Addabbo's finances deteriorated. At a meeting of senior management on November 4, 2019, Mikulski reported that Addabbo was $8.5 million in the red. *Id.* at ¶¶ 24–26. Shortly thereafter, Addabbo terminated Dr. Hill as CEO and replaced her with Dr. Miriam Vega. *Id.* at ¶¶ 29–31.

As CEO, Dr. Vega made several personnel changes at Addabbo. In December 2019, "citing budget cuts," Vega fired the firm's COO, a black woman name JoAnn Perou. *Id.* at ¶ 35. Then, in early 2020, Vega terminated Addabbo's entire billing team, on the view that it would be cheaper and more efficient to outsource billing services going forward. *Id.* at ¶ 39. Of those employees affected, between seven and ten were black, one was Hispanic, and one was Asian. *Ibid.* And in August 2020, Vega fired Addabbo's IT Director, a black man named Woody Nicholas, again "citing budget cuts." *Id.* at ¶ 71. Shortly thereafter Vega terminated three more members of the IT team—one black employee and two Asian employees. *Ibid.*

In June 2020, Vega hired a longtime friend of hers, Wesley Tashir-Rodriguez, to be Addabbo's new Executive Vice President of Operations. *Id.* at ¶ 42. According to the complaint, Tashir-Rodriguez's "abrasive style and lack of temperament" led to complaints by employees and vendors. *Id.* at ¶ 43. Vega allegedly disregarded these complaints, and indeed "accorded [Tashir-Rodriguez] preferential treatment" by permitting him "to work from home for an extended period" while other members of the senior management team were not permitted to do so. *Id.* at ¶¶ 43–45. As a result of Tashir-Rodriguez's absence, plaintiff "was required to perform . . . tasks outside of his role as Director of Human Resources," such as overseeing "inspections, plumbing issues, roof leaks and elevator issues that required someone to be present." *Id.* at ¶ 46. On one occasion, "raw sewage" was discovered in an Addabbo clinic that had been temporarily closed due to the COVID-19 pandemic. *Id.* at ¶¶ 50–51. Plaintiff notified Vega and Tashir-Rodriguez, at which point Vega "directed [p]laintiff (black) to continue working with the building landlord . . . and to

2

keep her and Rodriguez (Hispanic) informed of what was happening." *Id.* at ¶ 52. That "directive required [p]laintiff to frequently go to this location" where he was "forced to inhale sewage scent," along with several other employees, including two other black men, one black woman, a white man, a white woman, and two Indian men. *Id.* at ¶¶ 52–53.

In July 2020, Dr. Hill, Addabbo's former CEO, filed a Title VII lawsuit alleging that the company "discriminated against her, subjected her to a hostile work environment, and retaliated against her by terminating her employment." *Id.* at ¶ 54. In July and September 2020, plaintiff was interviewed by Addabbo's defense counsel in connection with this lawsuit. Plaintiff told the lawyer that "Dr. Hill's work performance was satisfactory" and that "she received favorable reviews." *Id.* at ¶ 58. In response to a question about whether plaintiff had ever witnessed Dr. Hill being discriminated against, plaintiff told the lawyer that he once overheard two Addabbo board members "yell[] at her" because they were unhappy with a personnel decision she had made. *Id.* at ¶¶ 55–56. Plaintiff also provided the lawyer with additional information "in connection with Dr. Hill's employment, fundraising events, monies raised, pictures, etc.," including her "entire personnel file." *Id.* at ¶¶ 60–61.

Also around July 2020, Mikulski—Addabbo's CFO—asked plaintiff "to sign an attestation in connection with a Pension Audit for calendar year 2015." *Id.* at ¶ 72. Plaintiff refused to sign the attestation, because he was "not an employee of [Addabbo] in 2015" and did not know when he was hired that "he would be required to sign for and attest to the truthfulness and accuracy of [Addabbo's] Pension Plan for calendar year 2015 – a time and space in which he was not a part of or associated with the organization." *Id.* at ¶¶ 74–75. Despite plaintiff's belief that "he could not truthfully attest to the findings of the audit," Vega instructed plaintiff to "just get it done," which plaintiff saw as a "subtle threat." *Id.* at ¶¶ 76–77. Plaintiff ultimately sent Vega and Mikulski an "amended" version of the document attesting that he had reviewed the pension report for 2015

3

"and agreed with it from his date of hire [in October 2016] to present." *Id.* at ¶ 78. That audit process also required Addabbo to "submit a revised Form 5500 for year 2015 to the IRS," and again plaintiff believed he "could not truthfully attest" to the accuracy of that form. *Id.* at ¶ 81.

In July 2020, one of Addabbo's pension program participants, a dentist named Maria Sales, contacted plaintiff about what she believed were "missing pension contributions deducted from her paycheck for several pay periods." *Id.* at ¶ 82. Plaintiff notified Mikulski and suggested that Addabbo audit its pension contributions for 2018 and 2019. *Id.* at ¶ 83. Mikulski initially objected out of fear of "opening up a pandora's box." *Ibid.* Mark Rubenstein, Addabbo's pension broker, who was also present, agreed with Mikulski, adding that because employees "don't open their statement[s], they wouldn't know anyway." *Id.* at ¶¶ 83–84. Eventually, however, Mikulski agreed that Rubenstein should perform an audit, and the audit "revealed that [Addabbo] sent pension contributions late on at least five occasions during the audit period" and that employees had been surreptitiously charged a $10 monthly maintenance fee by the plan administrator. *Id.* at ¶¶ 86–88. Plaintiff urged Rubenstein, Mikulski, and Vega to disclose this "wrongdoing" to employees and regulators, but they refused, which plaintiff saw as a "cover-up." *Id.* at ¶¶ 90–92.

In late 2020, a regional nurse manager named Rose Sauld filed a religious harassment complaint against Addabbo's Director of Nursing, Le-Nise Watson-Hudson. *Id.* at ¶ 94. As HR Director, plaintiff investigated the complaint and produced a report recommending that Watson-Hudson receive a warning. *Ibid.* Vega opted not to take any disciplinary action, telling plaintiff that Addabbo "had to be careful" about how it handled the complaint so as not to "make [Addabbo] look bad in Dr. Hill's pending lawsuit." *Id.* at ¶ 95.

In January 2021, Vega advised plaintiff that from that point forward he would report to Tashir-Rodriguez rather than to Vega directly. *Id.* at ¶ 96. According to plaintiff, neither Vega nor Tashir-Rodriguez ever complained about his performance. *Id.* at ¶¶ 97–98. And for plaintiff's

4

"first three years" at the company, he "received strong performance reviews." *Id.* at ¶ 8. Nevertheless, on April 16, 2021, Addabbo fired plaintiff effective April 30, citing "poor performance." *Id.* at ¶ 99. Plaintiff alleges that, upon his firing, "Dr. Vega offered [him] the sum of $20,000.00" to "secur[e] his help and cooperation to assist the organization with pending legal matters." *Id.* at ¶ 100. "Plaintiff declined th[at] offer based on the wrongdoings outlined in th[e] complaint." *Ibid.*

### B. Procedural Background

At some point in 2021, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission. *See id.* at 33–35. That agency issued plaintiff a right-to-sue letter on August 23, 2021. *Id.* at 33. Plaintiff then filed this lawsuit on November 12, 2021. *See generally* Compl. (Dkt. #1). Plaintiff filed the operative amended complaint on May 13, 2022. Plaintiff's amended complaint brings claims for gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin Code § 8-101 *et seq.*; as well as further retaliation claims under Section 510 of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140; and the anti-retaliation provision of the Taxpayer First Act, 26 U.S.C. § 7623(d).

Defendant now moves to dismiss that complaint in its entirety for failure to state a claim.

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To avoid dismissal on that basis, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

5

alleged." *Ibid.* (discussing Fed. R. Civ. P. 8). The facial "plausibility standard is not akin to a probability requirement," but it requires a plaintiff to allege sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)) (quotation marks omitted). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof [of the facts alleged] is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (quotation marks omitted).

When considering a motion under Rule 12(b)(6), a court may consider only (i) the complaint itself, (ii) documents either attached to the complaint or incorporated in it by reference, (iii) documents the plaintiff relied on and knew of when bringing suit, and (iv) matters in the public record that are subject to judicial notice. *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999). When reviewing the complaint, the court must accept all facts alleged in a complaint as true. *Iqbal*, 556 U.S. at 678. The court, however, is not obligated to adopt "mere conclusory statements" or "threadbare recitals of the elements of a cause of action" that are not "supported by factual allegations." *Id.* at 678–79.

Federal Rule of Civil Procedure 12(b)(1), meanwhile, permits dismissal of an action for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When considering a motion to dismiss under Rule 12(b)(1), the court takes as true the factual allegations in the complaint but does not draw inferences favorable to the party asserting jurisdiction. *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).

6

The complaint of a *pro se* plaintiff must be "liberally construed, and . . . however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). *Pro se* status, however, "'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## DISCUSSION

Plaintiff's amended complaint brings claims for (1) gender discrimination under Title VII, the NYSHRL, and the NYCHRL; (2) retaliation under those same laws; (3) retaliation under ERISA; and (4) retaliation under the Taxpayer First Act. Because plaintiff has not plausibly alleged he is entitled to relief under any of these laws, the complaint is dismissed.

**I.   Plaintiff's Gender Discrimination Claims Under Title VII, the NYSHRL, and the NYCHRL Are Dismissed**

Plaintiff has failed to plausibly allege that he was discriminated against because of his gender in violation of Title VII, the NYSHRL, or the NYCHRL. These three statutes are similar but not identical. *See Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019) (setting out the elements of a Title VII claim); *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109–10 (2d Cir. 2013) (explaining that the NYCHRL is interpreted in a manner more favorable to plaintiffs); *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 343 (S.D.N.Y. 2021) (explaining that the NYSHRL, which used to be construed as parallel to Title VII, was recently amended to more closely track the NYCHRL). But under all three, "a plaintiff must . . . link the adverse employment action to a discriminatory motivation." *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 258 (E.D.N.Y. May 24, 2012). Specifically, a plaintiff must at least allege that his protected status "was one of the motivating factors" in the adverse employment action or unequal treatment,

7

"even if it was not the sole motivating factor." *Cardwell v. Davis Polk & Wardwell LLP*, No. 19-CV-10256 (GHW), 2020 WL 6274826, at *19–20 (S.D.N.Y. Oct. 24, 2020) (stating that the applicable causation standards under Title VII, the NYSHRL, and the NYCHRL "seem[] to be equivalent").

Plaintiff's gender discrimination claims fail to satisfy that standard. Beyond alleging that he "is male," Am. Compl. ¶¶ 105, 112, 119, and that defendant "unlawfully discriminated . . . against [him] when it terminated his employment," *id.* at ¶¶ 113, 120, the complaint contains no factual allegations creating a plausible inference that his gender was a motivating factor in his termination. Such "bald assertions of discrimination . . . , unsupported by any comments, actions, or examples of similarly-situated individuals outside of [plaintiff's] protected class being treated differently, from which [a court] could infer that the defendants possessed a discriminatory . . . motive, are implausible and insufficient to survive a motion to dismiss." *Jackson v. Cnty. of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011) (citing *Iqbal*, 556 U.S. at 680–81); *see also, e.g.*, *Samuel v. Bellevue Hosp. Ctr.*, 366 F. App'x 206, 207 (2d Cir. 2010) (affirming dismissal of the plaintiff's discrimination claim because he "failed to allege sufficient facts to render plausible his conclusory assertion that the defendants discriminated against him on the basis of his membership in a protected class"); *Jones v. City of New York*, No. 14-CV-0826 (CBA) (RLM), 2015 WL 502227, at *4 (E.D.N.Y. Feb. 5, 2015) ("Naked assertions of [] discrimination . . . without any specific allegation of a causal link between the [d]efendants' conduct and the [p]laintiff's [membership in a protected class], [are] too conclusory to withstand a motion to dismiss.") (alterations in original; citations omitted); *Idlisan v. North Shore–Long Island Jewish Health Sys., Inc.*, No. 13-CV-2345 (SJF) (GRB), 2014 WL 2157540, at *7 (E.D.N.Y. May 23, 2014) (dismissing discrimination claim where "the complaint fails to plead any facts linking defendant's

8

failure to hire plaintiff to his race, national origin or disability, or supporting a reasonable inference that defendant discriminated against plaintiff because of [those characteristics]").[*]

## II. Plaintiff's Retaliation Claims Under Title VII, the NYSHRL, and the NYCHRL Are Dismissed

Defendant's motion to dismiss is likewise granted as to plaintiff's Title VII and state- and city-law retaliation claims, because (1) plaintiff has not plausibly alleged that he took any action opposing discrimination of which defendant was aware, and (2) plaintiff has not put forward evidence supporting an inference of retaliatory intent.

Title VII, the NYSHRL, and the NYCHRL each provide a cause of action for individuals who are retaliated against for protesting discrimination that is forbidden under those anti-discrimination laws. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 89–91 (2d Cir. 2015) (Title VII); *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (NYSHRL); *Mihalik*, 715 F.3d at 112 (NYCHRL). To state a retaliation claim under each of those statutes, a plaintiff must plausibly allege that he "participat[ed] in a protected activity," that his employer "knew of the protected activity," and that there is "a causal connection between the protected activity" and a retaliatory employment action. *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (citation omitted) (Title VII); *see Summa v. Hofstra Univ.*, 708 F.3d 115,

---

[*] While his complaint contains several references to the race of various Addabbo employees, plaintiff does not allege that defendants violated Title VII, the NYSHRL, or the NYCHRL based on race discrimination. *See* Am. Compl. ¶¶ 102–21 (alleging only gender discrimination and retaliation), and he does not defend against the motion to dismiss by arguing that his complaint contains such a claim, *see generally* Pl.'s Opp'n to Def.'s Mot. to Dismiss (Dkt. #24) ("Pl.'s Opp'n"). In any event, the complaint does not appear to support such a claim, because it contains no allegations that similarly situated individuals of different races received better treatment than he did or were not terminated. *See Graham v. Long Island R.R.*, 230 F.3d 34, 39–40 (2d Cir. 2000) (explaining that a plaintiff must show that a "similarly situated" employee, meaning one who is "subject to the same performance evaluation and discipline standards" as the plaintiff, "went undisciplined [after] engag[ing] in comparable conduct"). While plaintiff's complaint catalogues various layoffs that occurred during the first few months of Dr. Vega's tenure, *see* Am. Compl. ¶¶ 35, 39, 71, plaintiff alleges no facts supporting an inference that any of these terminations—let alone his own—were racially motivated, instead suggesting that Dr. Vega was playing favorites by outsourcing the roles previously filled by the laid-off employees to "out-of-state companies" with whom Vega was "open" about "her friendship," *id.* at ¶ 40, and replacing an existing employee with a longtime friend, *id.* at ¶ 42. Title VII does not create a remedy for such conduct.

125 (2d Cir. 2013) (NYSHRL); *Adams v. City of N.Y.*, 837 F. Supp. 2d 108, 128 (E.D.N.Y. 2011) (NYCHRL); *see also Kraiem v. JonesTrading Institutional Servs. LLC*, 571 F. Supp. 3d 53, 60 (S.D.N.Y. 2021). The type of causation required by the statutes varies. "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). Under the NYCHRL, by contrast, "a plaintiff need only allege that retaliatory animus played *some* role in the employer's decision." *Cardwell*, 2020 WL 6274826, at *37. Courts have reached differing conclusions about which of those standards applies to claims under the NYSHRL. *See ibid.* (noting this uncertainty).

Plaintiff's retaliation claims are deficient under both statutory standards because plaintiff has not plausibly alleged that he engaged in any protected activity of which defendant was aware. Plaintiff asserts that he engaged in protected activity because he "inten[ded] to testify in support of Dr. Hill" in her discrimination case against Addabbo. Am. Compl. ¶ 106. Such an intention, if it had been voiced to plaintiff's employer, would qualify as "oppos[ing] an[] unlawful employment practice." *Duplan v. City of N.Y.*, 888 F.3d 612, 625 (2d Cir. 2018) (quoting *Vega*, 801 F.3d at 90); *see Mihalik,* 715 F.3d at 112 (explaining that opposing discrimination "can include situations where a person, before the retaliatory conduct occurred, merely made clear her disapproval of the defendant's discrimination by communicating to him, in substance, that she thought his treatment of the victim was wrong'") (quotation marks and brackets omitted). But plaintiff alleges no facts suggesting that Addabbo was actually aware of plaintiff's intent. Instead, the complaint merely indicates that, after Dr. Hill filed her lawsuit, plaintiff cooperated with Addabbo's own internal investigation of those claims by speaking to Addabbo's defense counsel and providing counsel with various documents, including Dr. Hill's personnel file. Am. Compl. ¶¶ 55–61. While plaintiff does allege that he told Addabbo's counsel that Dr. Hill's "work performance was satisfactory" and that Addabbo "knew that [p]laintiff could be called to testify and corroborate

10

Dr. Hill['s] claim that she was not solely responsible for [Addabbo's] operational deficit," *id.* at ¶¶ 58, 62, these allegations do not indicate that plaintiff believed Dr. Hill to have been discriminated against, told Addabbo as much, or "made clear [his] disapproval" of such discrimination. *Mihalik,* 715 F.3d at 112. Accordingly, plaintiff has failed to plead facts indicating "that the defendant knew of [his] protected activity." *Hicks*, 593 F.3d at 164.

Even if plaintiff had plausibly alleged that defendants knew of his intent to testify in support of Dr. Hill, plaintiff's complaint would fail because he has not plausibly alleged a causal connection between his protected activity and his firing. *See ibid*. Plaintiff's firing did not occur so close in time to any of plaintiff's conduct relating to Dr. Hill for temporal proximity by itself to support a causal inference. Plaintiff spoke to Addabbo's defense counsel about Dr. Hill's case in July and September of 2020, Am. Compl. ¶ 55, but was not terminated until April 2021, around seven months after that second discussion. The Second Circuit "has not identified an outer limit beyond which a temporal relationship is too attenuated to support a finding of causality," *Kim v. Columbia Univ.*, 460 F. App'x 23, 25 (2d Cir. 2012), but "most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference," *De Figueroa v. New York*, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019); *see Ragin v. East Ramapo Cent. Sch. Dist.*, No. 05-CV-6496 (PGG), 2010 WL 1326779, at *24 (S.D.N.Y. Mar. 31, 2010) (collecting cases), *aff'd*, 417 F. App'x 81 (2d Cir. 2011); *Kraiem*, 571 F. Supp. 3d at 60 (noting that, despite the different causation standards under the three laws, "courts apply the same temporal-proximity analysis to NYCHRL and NYSHRL retaliation claims as they do to Title VII claims"); *cf. Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("[T]he temporal proximity must be 'very close.'") (citation omitted). While in rare cases "an inference of retaliatory intent has been found in cases involving a gap of as long as eight months," *Ragin*, 2010 WL 1326779, at *24 (citing *Burkybile v. Bd. of Educ. of the Hastings-on-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 314 (2d

11

Cir. 2005)), there are no allegations in plaintiff's complaint that warrant "vary[ing] from the general rule" that a gap of several months between the protected activity and the adverse action defeats the causation inference, *ibid*. And plaintiff has not alleged facts other than temporal proximity that support an inference that the termination of his employment was retaliatory.

Plaintiff's Title VII, NYSHRL, and NYCHRL retaliation claims are dismissed.

### III. Plaintiff's ERISA Retaliation Claim Is Dismissed

Plaintiff's claim for ERISA retaliation must also be dismissed. Section 510 of ERISA provides that "[i]t shall be unlawful for any person to discharge . . . a participant or beneficiary" either (1) in retaliation "for exercising any right to which he entitled under the provisions of an employee benefit plan" or (2) "for the purpose of interfering with the attainment of any right to which such participant may become entitled under [such a] plan." 29 U.S.C. § 1140; *see Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1110–11 (2d Cir. 1988). The provision thus "prohibits two types of employer discrimination"—cases in which the employer "interfer[es] with an employee's exercise of certain rights," and cases in which the employer "interfer[es] with any employee's attainment of certain rights." *Russell v. Northrop Grumman Corp.*, 921 F. Supp. 143, 147 (E.D.N.Y. 1996). Accordingly, "to avoid dismissal, [a plaintiff] must allege that [1] she has vested rights under an ERISA-covered employee benefit plan and [2] that defendant interfered with her *attainment* of those rights or retaliated against her for *exercising* them." *Wharton v. Duke Realty, LLP*, 467 F. Supp. 2d 381, 388 (S.D.N.Y. 2006) (emphases added). To satisfy the second element, a plaintiff must "show that an employer was at least in part motivated by the specific intent to engage in activity prohibited by § 510." *Dister*, 859 F.2d at 1111. Here, while plaintiff does allege that he was a "vested plan participant," Am. Compl. ¶ 90, he has failed to plausibly allege that defendant terminated him with specific intent either to retaliate for his exercise of plan rights or to prevent him from attaining any such rights.

12

At the outset, plaintiff's claim is based on retaliation for exercising a vested right rather than interference with the attainment of such rights. A typical attainment claim involves a termination occurring shortly before a plaintiff's "[p]lan rights [a]re to vest," often yielding "substantial cost savings to [the defendant]." *Dister*, 859 F.2d at 1115; *see Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 281 (2d Cir. 1987) (affirming a jury verdict for plaintiff where evidence suggested plaintiff "was being harassed because her pension was about to vest"); *Russell*, 921 F. Supp. at 146–48 (finding that plaintiff had stated a retaliation claim where he was terminated seven months before the end of a 20-year vesting period). There are no allegations of that nature here. Instead, plaintiff asserts that he "engaged in protected activity"—that is, exercised a vested right—when he told Vega, Mikulski, and Rubenstein that they should inform employees about Addabbo's delays in forwarding pension contributions and about the undisclosed monthly management fee. Am. Compl. ¶¶ 90, 124. And plaintiff says defendant "retaliated against [him]" for this conduct "when it terminated his employment." *Id.* at ¶ 124.

But even assuming plaintiff's statements to Vega, Mikulski, and Rubenstein qualified as "protected activity" under Section 510, *Kim*, 460 F. App'x at 25, plaintiff has not put forward any evidence of a causal link to his termination giving rise to "an inference of discrimination," *Dister*, 859 F.2d at 1115 (citation omitted). "Such a connection may be shown with either evidence of retaliatory animus directed against a plaintiff by a defendant or a close temporal proximity between the protected activity and the adverse action." *Grauer v. UBS Fin. Servs., Inc.,* No. 07-CV-5450 (LAP), 2008 WL 11398936, at *9 (S.D.N.Y. Dec. 17, 2008) (quotation marks omitted).

Plaintiff has not alleged either. While Vega, Mikulski, and Rubenstein rejected plaintiff's request to inform employees about the pension irregularities and "told [him] not to disclose" that information himself, Am. Compl. ¶ 91, all indications are that plaintiff abided by that instruction and suffered no adverse consequences for raising his concerns. *Compare Nicholaou v. Horizon*

13

*Media, Inc.*, 402 F.3d 325, 326, 329 (2d Cir. 2005) (finding that plaintiff had stated a claim for retaliation when "a campaign of retaliation . . . which culminated in her termination" began "[w]ithin days" of a meeting in which plaintiff advised her employee of her "belief that the company's 401(k) plan had for years been underfunded"). And with no indication that plaintiff ever discussed these concerns with anyone after that initial July 2020 exchange, the nine-month gap between plaintiff's conversation with Vega, Mikulski, and Rubenstein and his ultimate termination in April 2021 is too long to support an inference of discrimination. *See De Figueroa*, 403 F. Supp. 3d at 157 (explaining that, in the Second Circuit, a gap "beyond two or three months will [normally] break the causal inference"). Just as with plaintiff's Title VII, NYSHRL, and NYCHRL retaliation claims, there are no allegations in plaintiff's complaint that warrant "vary[ing] from th[at] general rule" here. *Ragin*, 2010 WL 1326779, at *24.

Plaintiff's claim for ERISA retaliation is accordingly dismissed.

**IV.     Plaintiff's Taxpayer First Act Retaliation Claim Is Dismissed**

Finally, plaintiff's claim under Section 1405(b) of the Taxpayer First Act, Pub. L. No. 116-25, 133 Stat. 981 (Jul. 1, 2019), is dismissed for lack of subject matter jurisdiction. That statute forbids an employer from firing an employee "in reprisal for any lawful act done by the employee . . . to provide information, cause information to be provided, or otherwise assist in an investigation regarding underpayment of tax or any conduct which the employee reasonably believes constitutes a violation of the internal revenue laws or any provision of Federal law relating to tax fraud." 26 U.S.C. § 7623(d)(1)(A). Plaintiff alleges that he engaged in protected activity within the meaning of this provision when he refused to sign an IRS Form 5500 attesting to the accuracy of Addabbo's ERISA reporting for plan year 2015, before plaintiff was employed by Addabbo. *See* Am. Compl. ¶¶ 74–75, 81, 129. And plaintiff alleges that Addabbo "unlawfully retaliated against [him]" for failing to sign this form "when it terminated his employment." *Id.* at ¶ 130.

14

A plaintiff may not bring an action under Section 7623(d) in federal court unless he has first "fil[ed] a complaint with the Secretary of Labor" and shown that the Secretary "has not issued a final decision within 180 days of the filing of th[at] complaint" and that "there is no showing that such delay is due to the bad faith of the claimant." 26 U.S.C. § 7623(d)(2)(A)(i)–(ii). This procedural structure is common among whistleblowing statutes. *See, e.g.*, 31 U.S.C. § 5323(g)(2)(A)–(B) (identical); 41 U.S.C. § 4712(c)(2) (similar). Analyzing another such statute—an identically-worded provision of the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A(b)(1)(A)–(B)—the Second Circuit concluded that "[t]his procedural structure reflects Congress's clear intent for federal courts to exercise jurisdiction . . . only after the claimant has first exhausted the statute's administrative remedies." *Daly v. Citigroup Inc.*, 939 F.3d 415, 428 (2d Cir. 2019). As a result, the Second Circuit held that "the administrative exhaustion requirements under SOX are jurisdictional and a prerequisite to suit in federal court." *Ibid.*; *see Mabie v. Abdalati*, No. 21-CV-2890 (MEH), 2022 WL 1810594, at *13 (D. Colo. June 2, 2022) ("[C]ase law construes the [exhaustion] requirement [in 41 U.S.C. § 4712(c)(2)] as a mandatory step and a prerequisite to a federal court's exercise of subject matter jurisdiction."). Because the Taxpayer First Act's private cause of action is identical in all material respects to the one in SOX, it follows that here, too, a failure to exhaust deprives the Court of jurisdiction.

Plaintiff's Taxpayer First Act claim is dismissed for lack of subject matter jurisdiction under these principles. "A party seeking to invoke the subject matter jurisdiction of a Court has the burden of demonstrating that there is subject matter jurisdiction in the case." *Shenandoah v. Halbritter*, 366 F.3d 89, 91 (2d Cir. 2004). Here, plaintiff did not allege in his complaint that he had previously filed a complaint with the Secretary of Labor on which the Secretary failed to act. *See* 26 U.S.C. § 7623(d)(2)(A)(i)–(ii). Nor did plaintiff claim he had filed such an administrative complaint in response to defendant's motion seeking to dismiss the Taxpayer First Act claim on

15

the ground that "[p]laintiff failed to first file with the U.S. Department of Labor" and thus "has no right to access [the] federal courts" on this claim.  Mot. to Dismiss 18 (Dkt. #19).  Accordingly, plaintiff's claim for retaliation under the Taxpayer First Act is dismissed for lack of subject-matter jurisdiction.  *See Daly*, 939 F.3d at 428–29 (resolving plaintiff's failure to exhaust on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)); *see also Golub v. Berdon LLP*, No. 19-CV-10309 (JGK), 2022 WL 1228025, at *4 (S.D.N.Y. Apr. 26, 2022).

## CONCLUSION

Defendant's motion to dismiss is granted.  Plaintiff's claims under Title VII, the NYSHRL, the NYCHRL, and ERISA are dismissed for failure to state a claim, and plaintiff's claim under the Taxpayer First Act is dismissed for want of jurisdiction.  Plaintiff may file a second amended complaint within 30 days of the date of this Order.  The new complaint must be captioned "Second Amended Complaint" and shall bear the same docket number as this Order.  Plaintiff is advised that the second amended complaint will replace his first amended complaint.  All further proceedings are stayed for 30 days.  If plaintiff does not file a second amended complaint within 30 days, judgment shall be entered dismissing the case.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, so *in forma pauperis* status is denied for the purpose of any appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

                                                  */s/ Rachel Kovner*
                                                  RACHEL P. KOVNER
                                                  United States District Judge

Dated:  March 30, 2023
          Brooklyn, New York