UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
AURELIO GOODEN,

                              Plaintiff,

                                                                    **REPORT AND**
                                                                    **RECOMMENDATION**
              -against-                                              21-CV-6313-RPK-SJB

JOSEPH P. ADDABBO FAMILY HEALTH
CENTER, INC.

                              Defendant.
-----------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

Plaintiff Aurelio Gooden, proceeding *pro se*, brought this case alleging claims of

discrimination and retaliation against his former employer, Defendant Joseph P.

Addabbo Family Health Center, Inc. ("Addabbo").  The Court previously dismissed

Gooden's earlier complaint but granted Gooden leave to file a Second Amended

Complaint to address several deficiencies.  Gooden's amended pleading, while curing

some of the deficiencies, still fails to state a claim upon which relief can be granted.  As

such, the Court respectfully recommends that Defendant's motion be granted and that

Gooden's claims be dismissed with prejudice.

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

For the purposes of Addabbo's motion to dismiss, the Court is "required to treat

[the Second Amended Complaint's] factual allegations as true, drawing all reasonable

inferences in favor of [Gooden] to the extent that the inferences are plausibly supported

by allegations of fact."  *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d

Cir. 2021).  The Court "therefore recite[s] the substance of the allegations as if they

represented true facts, with the understanding that these are not findings of the court, as we have no way of knowing at this stage what are the true facts." *Id.*

The Court assumes familiarity with the facts and procedural history detailed in Judge Rachel P. Kovner's Memorandum and Order dated March 30, 2023 (the "March M&O" or the "M&O"). *Gooden v. Joseph P. Addabbo Fam. Health Ctr., Inc.*, No. 21-CV-6313, 2023 WL 2709735, at *1–*3 (E.D.N.Y. Mar. 30, 2022).

To summarize, the First Amended Complaint set forth the following claims against Addabbo: (1) gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin Code § 8-101 *et seq.*, (First Am. Compl. dated May 13, 2022 ("First Am. Compl."), Dkt. No. 17 ¶¶ 102–22); (2) retaliation under section 510 of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, (*id.* ¶¶ 123–27); and (3) retaliation under the Taxpayer First Act ("TFA"), 26 U.S.C. § 7623(d), (*id.* ¶¶ 128–32). In the March M&O, Judge Kovner dismissed all of Gooden's claims without prejudice to renewal. *Gooden*, 2023 WL 2709735, at *8.

She found that Gooden failed to plausibly allege any of the elements of gender discrimination under Title VII, the NYSHRL, or the NYCHRL. *Id.* at *4. Gooden's retaliation claims under Title VII, the NYSHRL, and the NYCHRL were also dismissed for failure to plead any of the three required elements: "that he 'participat[ed] in a protected activity,' that his employer 'knew of the protected activity,' and that 'there is a causal connection between the protected activity' and a retaliatory employment action." *Id.* at *5 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)). In the First Amended Complaint, Gooden claimed that he engaged in protected activity by intending

to testify in support of the former CEO of Addabbo in her discrimination lawsuit against Addabbo. (First Am. Compl. ¶ 106). The M&O noted that such intent could constitute protected activity, but Gooden had not alleged any additional facts to suggest that Addabbo knew of his intent to testify or that there was any causal connection between his potential testimony and his subsequent firing. *Gooden*, 2023 WL 2709735, at *5–*6.

Gooden's other claims were also dismissed. Although Gooden may have established that he engaged in protected activity under ERISA section 510—by informing management about Addabbo's pension plan deficiencies—he did not allege any causal connection between that reporting and his firing. *Id.* at *7. Lastly, Gooden's claim under section 1405(b) of the TFA was dismissed because he failed to allege that he had exhausted his administrative remedies, as required by the statute. *Id.* at *7–*8.

The Second Amended Complaint contains additional allegations absent from his earlier pleadings. Gooden, a Black man, was hired by Addabbo as its Director of Human Resources in 2016. (Second Am. Compl. dated May 22, 2023 ("Second Am. Compl."), Dkt. No. 29 ¶¶ 7, 187). As part of senior management, he reported to then-CEO Dr. Marjorie Hill, a Black woman. (*Id.* ¶ 7). In 2019, after Addabbo had sustained serious financial losses, Addabbo fired Hill as CEO and appointed Dr. Miriam Vega, a Hispanic woman, to replace her. (*Id.* ¶¶ 29–31, 176). Vega made several personnel changes at Addabbo. In December 2019, Vega fired JoAnn Perou, the Chief Operating Officer and a Black woman. (*Id.* ¶ 35). Between February and April 2020, Vega terminated Addabbo's entire in-house billing team; Gooden alleges that between seven and ten of the affected employees were Black, one was Hispanic, and one was Asian. (*Id.* ¶ 39). Vega recommended replacing the in-house billing team with an external billing company that Vega had worked with previously. (*Id.* ¶ 40). In August 2020, Vega fired

another Black member of senior management, Woody Nicholas, Director of IT. (Second Am. Compl. ¶ 82). Vega's and Addabbo's cited reasons for all these actions were budget cuts and increased efficiency. (*See, e.g.*, *id.* ¶¶ 35, 39, 82). In June 2020, Vega hired Wesley Tashir-Rodriguez, a Hispanic man, as Executive Vice President of Operations; Tashir-Rodriguez had been a friend of Vega's for many years. (*Id.* ¶¶ 42, 176). Gooden alleges that Tashir-Rodriguez was treated more favorably than he. For instance, in the summer of 2020, Gooden was assigned to help clean up a raw sewage leak at an Addabbo facility, along with several other senior management members, (*id.* ¶¶ 51–53), while Tashir-Rodriguez was not involved in the clean-up and, separately, was permitted to work remotely while other senior employees were not. (*Id.* ¶¶ 53, 122).

In July 2020, Gooden discovered inconsistencies in Addabbo's pension contributions that he reported to Addabbo leadership. (*Id.* ¶¶ 93–94). On Gooden's insistence, Addabbo underwent a pension audit, which revealed misreporting of a $10 monthly maintenance fee, (Second Am. Compl. ¶¶ 95, 99), and underfunding of Addabbo's pension fund. (*Id.* ¶¶ 200–02). Gooden alleges that he was "vocal" to Addabbo leadership about this problem "[f]rom the time he learned" of it in July 2020. (*Id.* ¶ 200). In January 2021, Gooden was excluded from board and management meetings that he had previously attended regularly and was ordered not to discuss the pension problems with other employees. (*Id.* ¶¶ 204, 209).

Also in July 2020, Hill sued Addabbo, asserting claims of employment discrimination. (*Id.* ¶ 54). Addabbo's defense counsel, Stephen Hans, interviewed Gooden in July 2020 and September 2020. (*Id.* ¶ 55). Gooden told Hans that he intended to testify in support of Hill's discrimination claim, and Hans took notes during both interviews. (Second Am. Compl. ¶¶ 57–58). Gooden alleges that before he was

4

terminated, Hill's counsel in her lawsuit sought depositions of Addabbo employees. (*Id.* ¶ 64). On April 15, 2021, Hill's counsel filed a motion to compel discovery, including for Rule 30(b)(6) depositions of Addabbo's employees. (*Id.* ¶ 63). The next day, Gooden was terminated by Addabbo. (*Id.* ¶ 110).

The Second Amended Complaint contains five counts. Counts I, II, and III are for gender and race discrimination and retaliation under Title VII, the NYSHRL, and the NYCHRL. (*Id.* ¶¶ 113–40, 141–68, 169–197).[1] Count IV is for retaliation under ERISA section 510. (*Id.* ¶¶ 198–216). And Count V is for retaliation under the TFA. (Second Am. Compl. ¶¶ 217–21). On June 22, 2023, Addabbo filed the present motion to dismiss the Second Amended Complaint. (Notice of Mot. to Dismiss dated June 22, 2023, Dkt. No. 31). Gooden did not file any opposition or response to Addabbo's motion, even after the Court granted him a *sua sponte* extension of time to respond. (Order dated Aug. 3, 2023). Thereafter, the Court deemed the motion unopposed and referred it to the undersigned. (Order Referring Mot. dated Oct. 3, 2023).

## DISCUSSION

"The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of . . . claims for relief." *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 155 (E.D.N.Y. 2018) (citing *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir.

---

[1] In its brief, Addabbo claims that "it remains unclear whether [Gooden] has exhausted his administrative remedies" under Title VII. (Mem. in Supp. of Mot. to Dismiss Second Am. Compl. dated June 22, 2023 ("Mem. of Law"), Dkt. No. 31-3 at 8). It contends that "[m]ost events set forth in the [Second Amended Complaint] occurred more than 300 days before Plaintiff . . . filed his original complaint before the EEOC." (*Id.*). However, Gooden received his right-to-sue letter from the EEOC on August 23, 2021—only 129 days after Gooden's termination. (Notice of Right to Sue dated Aug. 23, 2021, attached as Ex. to First Am. Compl.). Gooden alleges that his termination was the "discrete discriminatory act" forming the basis for his Title VII claims, and thus, his suit was timely. (*See, e.g.*, Second Am. Compl. ¶¶ 133–39).

2007)).  In deciding such a motion, the Court must "construe the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (quotations and alteration omitted); *Amadei*, 348 F. Supp. 3d at 155 ("[W]hen reviewing a complaint on a motion to dismiss for failure to state a claim, the court must accept as true all allegations of fact in the complaint and draw all reasonable inferences in favor of [the non-moving party].").  "*Pro se* complaints are held to less stringent standards than those drafted by attorneys, and [the Court is] required to read the plaintiff's *pro se* complaint liberally, interpreting it as raising the strongest arguments it suggests." *Johnson v. Darby*, 142 F. Supp. 3d 275, 277 (E.D.N.Y. 2015), *aff'd sub nom. Johnson v. Dobry*, 660 F. App'x 69, 72 (2d Cir. 2016).[2]

Once the facts are construed in the light most favorable to the non-moving party—here, Gooden—to avoid dismissal, there must be sufficient facts that allege a plausible claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (quotations omitted)).  "[A] district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.  Of course, it may also consider matters of which judicial notice may be taken

---

[2] As Addabbo points out: "Although Mr. Goodman [sic] filed his Complaint as a pro se Plaintiff, the original Complaint clearly states that the pleadings were prepared with the assistance of R. Scott Oswald and Nicholas Woodfire of The Employment Law Group, P.C. . . .  Moreover, he was represented by that firm when he filed with the EEOC and when he requested a right to sue letter."  Mem. of Law at 5 n.1.

under Fed. R. Evid. 201." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A complaint must contain more than "naked assertion[s] devoid of further factual enhancement." *Id.* (quotations omitted). In other words, a plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; Fed. R. Civ. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (internal citations omitted). The determination of whether a party has alleged a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see also Escamilla v. Young Shing Trading Co.*, No. 17-CV-652, 2018 WL 1521858, at *2 (E.D.N.Y. Jan. 8, 2018), *report and recommendation adopted*, 2018 WL 1033249, at *3 (Feb. 23, 2018).

Despite the fact that the present motion is unopposed, the Court must still conduct its own independent review of the pleading. *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000) ("[A]lthough a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law. If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal.").

I.    Gender Discrimination and Retaliation Under Title VII, the NYSHRL, and the NYCHRL

As with the First Amended Complaint, Gooden has failed to plead any facts regarding discrimination or retaliation based on his gender in the Second Amended Complaint. *Gooden*, 2023 WL 2709735, at *4. "To survive a motion to dismiss [under Title VII], a plaintiff need only establish a *prima facie* case of sex discrimination by demonstrating that (1) he was within the protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019) (quotations and alterations omitted); *see also Gooden*, 2023 WL 2709735, at *4 (summarizing similarities between Title VII, the NYSHRL, and the NYCHRL). In the Second Amended Complaint, Gooden's gender discrimination and retaliation claims are the same as before, still limited to simple assertions that he is "male." (*See* Second Am. Compl. ¶¶ 116, 137, 144, 165, 172, 194). There are no additional factual allegations that any adverse employment action was linked, in any way, to a discriminatory motive against his gender. *See Gooden*, 2023 WL 2709735, at *4 ("[U]nder all three [statutes], a plaintiff must link the adverse employment action to a discriminatory motivation." (quotations and alterations omitted)). Thus, for the same reasons as found before, the Court recommends that Gooden's gender discrimination and retaliation claims under Title VII, the NYSHRL, and the NYCHRL be dismissed.

II.    Race Discrimination and Retaliation Under Title VII, the NYSHRL,[3] and the NYCHRL

Unlike in the First Amended Complaint, Gooden provides additional factual allegations to support his claim for discrimination and retaliation based on his race in the Second Amended Complaint.  The Court interprets Gooden's claim as one of intentional racial discrimination and not hostile work environment, although he uses the terms somewhat interchangeably.  (*See, e.g.*, Second Am. Compl. ¶¶ 137–40).[4]  He also plainly alleges retaliation because of his opposition to racial discrimination.  (*Id.* Count II ("Gender-Race discrimination & Retaliation"); *see, e.g.*, *id.* ¶ 161).  The Court addresses each claim in turn.

A.    Race Discrimination

To survive a motion to dismiss, the plaintiff must allege that he is a member of a protected class, that he was qualified for the position, that he suffered an adverse employment action, and that there is at least "minimal support for the proposition that the employer was motivated by discriminatory intent."  *DeVore v. Neighborhood Hous. Servs. of Jam. Inc.*, No. 15-CV-6218, 2017 WL 1034787, at *4 (E.D.N.Y. Mar. 16, 2017) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).  At the very least, under Title VII, the NYSHRL, and the NYCHRL, the plaintiff must show some

---

[3] Addabbo argues in its briefing that it is not liable under the NYSHRL because "[r]*espondeat superior* liability is not available in employment discrimination cases under the [NYSHRL]."  (Mem. of Law at 18).  The Court need not address this issue, as Gooden's NYSHRL claim is deficient in other respects.  *See infra* at pp. 11, 13–14.

[4] Gooden's hostile work environment claim, if there is any, is reduced to a single, conclusory sentence: "Plaintiff suffered a hostile work environment because he was a black male."  (Second Am. Compl. ¶ 137).  Even if Gooden was asserting such a claim, it is plainly deficient under Rule 12(b)(6) as a legal conclusion without any supporting details.

causal link between the discriminatory motivation of the employer and the adverse action he suffered. *See Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 258 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163, 165 (2d Cir. 2013); *see also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (acknowledging the requirement for a showing of this causal link even under the more lenient NYCHRL, noting plaintiff "still bears the burden of showing that the conduct is caused by a discriminatory motive"). To support an inference of discrimination, a plaintiff may show either outright, invidious discriminatory comments or actions, or "by otherwise creating a mosaic of intentional discrimination by identifying bits and pieces of evidence that together give rise to an inference of discrimination." *Banks v. General Motors, LLC*, 81 F.4th 242, 270 (2d Cir. 2023) (internal quotations omitted) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 82 (2d Cir. 2015)). One such way of proving an inference of discrimination is to "show[] that similarly situated employees belonging to a different racial group received more favorable treatment." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). Such employees must be similarly situated to the plaintiff in "all material respects," which may vary from case to case, but typically means that they were "subject to the same workplace standards" and "must have engaged in conduct of 'comparable seriousness.'" *Cooper v. Templeton*, 629 F. Supp. 3d 223, 231 (S.D.N.Y. 2022) (quoting *Graham*, 230 F.3d at 40), *aff'd sub nom. Cooper v. Franklin Templeton Invs.*, No. 22-CV-2763, 2023 WL 3882977, at *5 (2d Cir. June 5, 2023). "This requires 'a reasonably close resemblance of . . . facts and circumstances.'" *Id.* (alteration in original) (quoting *Graham*, 230 F.3d at 40).

In his Second Amended Complaint, Gooden includes several allegations to support his claim that he was terminated because of his race. *First*, he alleges that

Tashir-Rodriguez, the Executive VP of Operations, is a similarly situated employee who was treated better by Addabbo. (Second Am. Compl. ¶¶ 120–23). For example, Gooden was assigned to supervise the clean-up of raw sewage in one of Addabbo's facilities, along with seven other senior management members, even though it was not one of his duties, while Tashir-Rodriguez was not. (*Id.* ¶¶ 51–53, 118, 123). Gooden also points to Tashir-Rodriguez's ability to work remotely, a benefit denied to others. (*Id.* ¶ 130). However, Gooden fails to provide any allegations to demonstrate that he and Tashir-Rodriguez were similarly situated. Although they were both members of senior management at Addabbo, (*see id.* ¶¶ 7, 42–43), there are no factual details about their workplace and performance standards, salaries, duties, and interactions with other members of Addabbo. This requires any disparate treatment discrimination claim to be dismissed. *See, e.g.*, *Fahrenkrug v. Verizon Servs. Corp.*, 652 F. App'x 54, 57 (2d Cir. 2016) ("Plaintiff did not submit any evidence pertaining to her male peers' job duties, assignments, bonuses, or salary increases. . . . Plaintiff thus has not shown that she was treated 'less favorably than a similarly situated employee outside [her] protected group.'" (second alteration in original) (quoting *Graham*, 230 F.3d at 39)); *Antrobus v. City of New York*, No. 19-CV-6277, 2022 WL 4643018, at *4 (E.D.N.Y. Sept. 30, 2022) (dismissing plaintiff's disparate treatment claim because he failed to "plead that those other employees engaged in comparable conduct" or that "those employees are similarly situated in all material respects"); *Cooper*, 629 F. Supp. 3d at 231 ("Plaintiff has not pled that she and the three comparators she has identified were similarly situated in terms of position, seniority, job responsibilities, business unit, performance, length of experience, or even geography.").

But even assuming that Gooden and Tashir-Rodriguez were "similarly situated," Gooden has still failed to link the identified disparate treatment between himself and Tashir-Rodriguez to any discriminatory motive. Gooden admits that Tashir-Rodriguez was a friend of the new CEO, Vega, and had been for "many years." (Second Am. Compl. ¶ 42). Although Vega may have treated Tashir-Rodriguez more favorably when compared to Gooden, that alone does not lead to an inference of discriminatory intent. *Village of Freeport v. Barrella*, 814 F.3d 594, 613 (2d Cir. 2016) ("To put it more bluntly: neither § 1981 nor Title VII forbids favoritism, nepotism, or cronyism, so long as it is not premised on animus against a protected class."). Gooden's remaining allegations on this point—that other, unnamed, "non-black male[]" employees were treated more favorably than he, (Second Am. Compl. ¶¶ 127–29)—also do not satisfy this burden.

*Second*, Gooden suggests that other terminations of Black employees at Addabbo can give rise to an inference of racial discrimination. Evidence of a pattern of firings against employees of a protected group may support an inference of discrimination. But even if a plaintiff establishes such a pattern, there must still be evidence of discriminatory intent. *United States v. City of New York*, 717 F.3d 72, 83 (2d Cir. 2013). "[A] pattern-or-practice claim requires that 'racial discrimination was the company's standard operating procedure . . . rather than the unusual practice[.]'" *Id.* (alterations omitted) (quoting *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336 (1977)). And for such a claim, "the plaintiff must make a prima facie showing of a pervasive policy of intentional discrimination. . . . [and] a statistical showing of disparate impact might suffice." *Id.* at 84.

Between 2019 and 2020, three Black members of senior management were fired by Addabbo: Hill, the Black female CEO; Perou, the Black female COO; and Nicholas, the Black male Director of IT. (Second Am. Compl. ¶¶ 29, 35, 82). Gooden also states that in early 2020, Addabbo fired the entire billing team, which was made up of seven to ten Black employees, one Hispanic employee, and one Asian employee. (*Id*. ¶ 39). The reason cited by Addabbo at the time for the firing of all these employees was budget cuts and efficiency. (*Id*.).

While Gooden has identified a number of senior managers who were fired, he has not put these numbers in any context. For example, how many members of senior management worked at Addabbo? How many other terminations were there at this time? How large is the billing team in comparison to the rest of the company? In a small company with few employees, the firings would be statistically significant. *Hill v. City of New York*, 136 F. Supp. 3d 304, 333–34 (E.D.N.Y. 2015) ("A small number of confirmatory acts may suffice to state a plausible pattern or practice claim if a complaint contains factual allegations supporting the inference that the defendant had adopted a policy of discrimination." (citing *Ste. Marie v. E.R.R. Ass'n*, 650 F.2d 395, 406 (2d Cir. 1981))), *amended on other grounds by* No. 13-CV-6147, 2019 WL 1900503, at *11 (Apr. 29, 2019). But in a large organization, or even a small one where there were many firings, the practice identified would be a non-event. "Plaintiffs must plausibly allege that the discriminatory incidents were more than isolated or sporadic, but are repeated, routine, or of a generalized nature." *Id*. at 333. Statistics, of course, are not required, *Jenkins v. N.Y.C. Transit Auth.*, 646 F. Supp. 2d 464, 469 (S.D.N.Y. 2009), if a plaintiff provides other factual allegations to support a pattern of discrimination. *See id*. But there are no such facts here. In other words, Gooden gives no context or baseline from

which the Court can infer that Addabbo's treatment and firing of these Black employees was "standard operating procedure."

For these reasons, Gooden's race discrimination claim—couched as a traditional disparate treatment claim of individual discrimination or a class-wide pattern or practice claim—fails as a matter of law.[5]

B. Retaliation

As in his First Amended Complaint, Gooden also pleads retaliation for opposing race-based discrimination directed at others.  Title VII, the NYSHRL, and the NYCHRL all contain causes of action for retaliation by an employer against an employee when they protest illegal discrimination.  *Littlejohn*, 795 F.3d at 315 (Title VII); *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (the NYSHRL); *Mihalik*, 715 F.3d at 112 (the NYCHRL).

To meet the burden for a retaliation claim under Title VII, the NYSHRL, and the NYCHRL at this stage, a plaintiff must allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  *Littlejohn*, 795 F.3d at 315–16 (quoting *Hicks*, 593 F.3d at 164).  A "plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the]

---

[5] There may be a separate and independent bar to a pattern or practice claim here.  Gooden brings his claim as an individual, not as a class action, which is generally impermissible.  *Henderson v. City of New York*, 818 F. Supp. 2d 573, 578 (E.D.N.Y. 2011) (stating that pattern or practice disparate treatment claims "are typically brought as class actions" and "[e]very circuit court to have considered the issue has held that individual plaintiffs *cannot* bring pattern-or-practice claims.").

law." *La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 212 (2d Cir. 2010) (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)).

Gooden alleges that he engaged in protected activity when he "inten[ded] to testify in support of Dr. Hill in her discrimination case against Addabbo." *Gooden*, 2023 WL 2709735, at *5 (alteration in original) (quotations omitted); (Second Am. Compl. ¶ 138). In the March M&O, Judge Kovner found that such an intent "would qualify as 'oppos[ing] an[] unlawful employment practice'" and was sufficient to meet the first element of a retaliation claim. *Gooden*, 2023 WL 2709735, at *5 (alterations in original) (quoting *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018)); *accord Littlejohn*, 795 F.3d at 318 ("[I]f an employee—even one whose job responsibilities involved investigating complaints of discrimination—actively supports other employees in asserting their Title VII rights or personally complains or is critical about the discriminatory employment practices of h[is] employer, that employee has engaged in a protected activity[.]" (alterations and quotations omitted)). However, the First Amended Complaint failed to plausibly allege that Addabbo knew of his protected activity or that there was a causal connection between Gooden's protected activity and any adverse employment action. *Gooden*, 2023 WL 2709735, at *5–*6. Although Gooden has cured his failure to plausibly allege that Addabbo knew of his protected activity, he still has not sufficiently alleged that there was a causal connection between the protected activity and his firing.

In the Second Amended Complaint, Gooden adds additional allegations about his interactions with Addabbo's defense counsel, Stephen Hans, during two interviews in July 2020 and September 2020. (Second Am. Compl. ¶ 55; *see id.* ¶¶ 57–67). Gooden adds that he "made it clear to Mr. Hans that plaintiff would testify to his belief that Dr.

Hill was discriminated against and suffered hostile work environments." (*Id.* ¶ 58).  He details how Hans took notes during the two interviews, that Hans had "regular communication" with Addabbo, and that Hans shared his notes and his communications with Gooden with Addabbo regarding the Hill lawsuit.  (*Id.* ¶¶ 57, 59–61).  Given that Hans was Addabbo's counsel and was interviewing employees on a matter that was clearly of importance to Addabbo, it is plausible to infer that decisionmakers at Addabbo knew of Gooden's intent to testify.  *See Summa v. Hofstra Univ.*, 708 F.3d 115, 125–26 (2d Cir. 2013) ("Nothing more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity." (quotations omitted)); *see also Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (finding that plaintiff's discussion with an officer of her corporate employer about her discrimination complaint was sufficient to import knowledge); *cf. Moccio v. Cornell Univ.*, 889 F. Supp. 2d 539, 585 (S.D.N.Y. 2012) ("Knowledge of professionals within the institution tasked with investigating and evaluating claims of discrimination . . . is sufficient to show general corporate knowledge.").  Gooden has therefore plausibly alleged that Addabbo knew of his engagement in a protected activity.

However, the Second Amended Complaint still fails to plausibly allege a causal connection between Gooden's protected activity and any adverse employment action he suffered.  Title VII, the NYSHRL, and the NYCHRL all share the same four-step inquiry for retaliation claims; however, the burden on a plaintiff for causation differs under Title VII/the NYSHRL on the one hand, and the NYCHRL on the other hand.  *See Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 246–47, 252 (E.D.N.Y. 2015).  Under Title VII and the NYSHRL, causation "must be proved according to traditional principles of but-for causation," requiring a showing that the adverse employment action would not have

occurred in the absence of the employee's protected activity. *Id.* at 252 (quoting *Zann Kwan*, 737 F.3d at 845). Under the more lenient NYCHRL, the plaintiff must only allege that "retaliatory animus played *some* role in the employer's decision." *Cardwell v. Davis Polk & Wardwell LLP*, No. 19-CV-10256, 2020 WL 6274826, at *37 (S.D.N.Y. Oct. 24, 2020).

Under Title VII and the NYSHRL, "[a] plaintiff may demonstrate a causal connection under the fourth element by (a) indirectly showing that the protected activity was followed closely by discriminatory treatment; (b) indirectly through other evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (c) directly through evidence of retaliatory animus." *Soloviev*, 104 F. Supp. 3d at 250 (quotations omitted). The Second Circuit has "regularly held that '[t]he causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.'" *Summa*, 708 F.3d at 127–28 (quoting *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001)). Courts in the Second Circuit have generally found that a "lapse of time beyond two or three months will break the causal inference," *De Figueroa v. New York*, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019), but the Second Circuit has occasionally upheld causal time periods of several months, ranging from three to five to even seven months. *See Brown v. Waterbury Bd. of Educ.*, 247 F. Supp. 3d 196, 216 (D. Conn. 2017) (collecting Second Circuit cases). Despite the differing causation burdens between Title VII/the NYSHRL and the NYCHRL, "courts apply the same temporal-proximity analysis to NYCHRL and NYSHRL retaliation claims as they do to Title VII claims." *Kraiem v. JonesTrading Institutional Servs. LLC*, 571 F. Supp. 3d 53, 60 (S.D.N.Y. 2021).

Gooden alleges that he spoke with Hans and expressed his intent to testify in support of Hill during two interviews in July 2020 and September 2020. (Second Am. Compl. ¶ 55). He was fired by Addabbo on April 16, 2021. (*Id.* ¶ 110). This is a gap of, at a minimum, seven months between Gooden's protected activity and his termination. This large gap in time undercuts any causal inference.[6]  Perhaps in anticipation of such a result, the Second Amended Complaint adds factual allegations that on the day before Gooden was fired, Hill—in her separate discrimination case against Addabbo—filed a motion to compel discovery, including for the depositions of certain employee witnesses, and that "Dr. Hill's counsel ha[d] previously served on defendants an FRCP notice under Rule 30(b)(6) for deposition of certain witnesses with knowledge employed." (*Id.* ¶¶ 63–64). Thus, Gooden now claims that the motion to compel in Hill's case—in which Gooden would be identified as a Rule 30(b)(6) witness, (*id.* ¶ 65)—re-triggered his original protected activity and resulted in his termination a day later. This argument fails. There is no allegation to suggest that *Gooden* (as opposed to Hill) took any action the day before his firing to state his support for Hill. That is, there is no allegation that Gooden again engaged in protected activity, such that there was only a day-long gap

---

[6] In cases where retaliatory intent has been inferred in a time span of more than two or three months, there is usually a reason to "vary from the general rule" based on some other factor or circumstance. *See Ragin v. E. Ramapo Cent. Sch. Dist.*, No. 05-CV-6496, 2010 WL 1326779, at *24 (S.D.N.Y. Mar. 31, 2010), *aff'd*, 417 F. App'x 81, 82 (2d Cir. 2011). For instance, in *Summa v. Hofstra University*, the Second Circuit upheld a four-month gap between the protected activity and retaliatory action because it was "the first moment in time when the [defendant's staff] could have retaliated against [plaintiff] as she was not directly working for them over the intervening months." 708 F.3d at 128. Likewise, in *Gorman-Bakos v. Cornell Cooperative Extension of Schenectady County*, the Circuit suggested a gap of five months may be sufficient where plaintiffs continued complaining about the discriminatory activity to the defendants throughout those five months. 252 F.3d 545, 555 (2d Cir. 2001). Gooden alleges no such extenuating circumstances or facts in the Second Amended Complaint.

between such activity and his firing.  That Hill (and her lawyers) may have filed a motion to compel does nothing to "reset" the causation clock.

There are also no allegations that Gooden continued informing Addabbo of his intent to testify in support of Hill in the intervening seven months.  Addabbo knew of Gooden's intent to testify as of the July 2020 and September 2020 interviews (or shortly thereafter).  Thus, the Second Amended Complaint does not allege that Gooden reengaged in protected activity closer to the time of his termination.  "And plaintiff has not alleged facts other than temporal proximity that support an inference that the termination of his employment was retaliatory." *Gooden*, 2023 WL 2709735, at *6.  As a result, there are no other facts from which to infer a causal link, and Gooden's retaliation claims under Title VII, the NYSHRL, and the NYCHRL should therefore be dismissed.

III.    Retaliation Under ERISA Section 510

The Second Amended Complaint also includes a claim for retaliation under section 510 of ERISA.  As the Court noted in the March M&O, Gooden's ERISA claim is based on retaliation for exercising a vested right under an ERISA plan, not for attaining those rights.  *Id.* (discussing the differences between an "exercise" claim and an "attainment" claim under ERISA section 510).  Although Gooden has plausibly alleged that he engaged in a protected activity, he has failed to allege that there was a causal connection between the protected activity and his termination sufficient to give rise to an inference of retaliatory intent.

Section 510 of ERISA makes it unlawful for an employer to "discharge . . . a participant or beneficiary" in an ERISA plan, in retaliation for "exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the

purpose of interfering with the attainment of any right to which such participant may become entitled under" an ERISA plan. 29 U.S.C. § 1140. Thus, as Judge Kovner explained in her M&O, "to avoid dismissal [under section 510], a plaintiff must allege that (1) []he has vested rights under an ERISA-covered employee benefit plan and (2) that defendant interfered with h[is] *attainment* of those rights or retaliated against h[im] for *exercising* them." *Gooden*, 2023 WL 2709735, at *6 (cleaned up) (quoting *Wharton v. Duke Realty, LLP*, 467 F. Supp. 2d 381, 388 (S.D.N.Y. 2006)). In the M&O, the Court found that Gooden had properly pled that he was a vested plan participant under ERISA, *id.*; (*see* Second Am. Compl. ¶ 101), thus fulfilling the first element.[7]

Judge Kovner dismissed Gooden's ERISA retaliation claim for failure to show that Addabbo "terminated him with specific intent either to retaliate for his exercise of plan rights or to prevent him from attaining any such rights." *Gooden*, 2023 WL 2709735, at *6; *see Giordano v. Thomson*, 564 F.3d 163, 169 (2d Cir. 2009) ("[Plaintiff] must prove that [the employer] had the specific intent to retaliate against him."). Gooden has now added factual allegations to the Second Amended Complaint on the underfunding of Addabbo's pension and his communications with Addabbo about the issue. He alleges that he was "vocal to management" about the underfunding problem

---

[7] Addabbo argues that the allegedly protected activities—mainly, reporting the pension underfunding problems to Addabbo management—cannot be protected activities because they were "actually [Gooden's] job functions as the Director of Human Resources." (Mem. of Law at 19). Addabbo's argument is legally incorrect. In *Nicolaou v. Horizon Media, Inc.*, the Second Circuit upheld an ERISA retaliation claim of an HR director who was fired for internally reporting an underfunding problem. 402 F.3d 325, 330 (2d Cir. 2005). The majority held that the HR director's "meeting with [the employer] regarding possible violations of ERISA . . . falls within the definition of an 'inquiry' and, therefore, the protection of Section 510." *Id.* Gooden has successfully alleged that his internal reporting of the pension underfunding to Addabbo was a protected activity.

from the time he learned of it in July 2020.  (Second Am. Compl. ¶ 200).  Gooden also

now alleges that Addabbo purposefully excluded him from management meetings in

January 2021 because of his complaints about the underfunding.  (*Id.* ¶¶ 204–05).  He

then alleges that Addabbo fired him so he would not interfere with its new plan to avoid

correcting the fund issues.  (*Id.* ¶ 210).

These additional allegations still do not show "evidence of retaliatory animus" or

a "close temporal proximity between the protected activity and the adverse action," as

required by section 510.  *Grauer v. UBS Fin. Servs., Inc.*, No. 07-CV-5450, 2008 WL

11398936, at *9 (S.D.N.Y. Dec. 17, 2008) (quotations omitted).[8]  The Second Amended

Complaint's addition of Gooden being "vocal to management" does not cure the original

deficiency of a nine-month gap between the protected activity and termination.  Such a

long gap undermines any inference of a causal link.  *See Howard v. City of New York*,

602 F. App'x 545, 549 (2d Cir. 2015) ("[Plaintiff] cannot raise a triable [issue] of

causation given that his protected activity occurred for so long without any adverse

action.").[9]  There are no additional allegations that Gooden renewed his complaints

about the pension underfunding closer to his termination on April 21, 2021, nor that

Addabbo had any reason to not fire him closer to July 2020, when Gooden first raised

his concerns.  Being more vocal simply underscores the vehemence with which Gooden

made his complaints (or engaged in his protected activity); it does nothing to bolster the

---

[8] Although *Grauer* is an ADEA case, the legal principles are the same for retaliation claims in statutes like Title VII and ERISA.  *Grauer*, 2008 WL 11398936, at *7 n.9.

[9] Even if the Court were to consider Gooden's exclusion from management meetings as an "adverse employment action," the five-month gap between his initial complaints in July 2020 and his exclusion from the meetings in January 2021 would still undermine a causal link.

link or shorten the time between the activity and the adverse action. For these reasons, the Court recommends that Gooden's retaliation claim under ERISA section 510 also be dismissed.

IV.    Retaliation Under TFA Section 1405(b)

Gooden reiterates his retaliation claim under the TFA in the Second Amended Complaint. This claim was previously dismissed for lack of subject matter jurisdiction because Gooden failed to exhaust his remedies under section 7623(d) by filing a complaint with the Secretary of Labor and thereafter showing that the Secretary had not issued a decision within 180 days. *See* 26 U.S.C. § 7623(d)(2)(A)(i)–(ii); *Gooden*, 2023 WL 2709735, at *7–*8. Gooden has not added any additional allegations to support his TFA retaliation claim in the Second Amended Complaint. (*See* Second Am. Compl. ¶¶ 217–21; Mem. of Law at 22). Because Gooden has not corrected the original deficiencies, his TFA claim should be dismissed for the same reasons previously stated in the M&O. *Gooden*, 2023 WL 2709735, at *7–*8.

CONCLUSION

For the reasons explained above, the Court respectfully recommends that all of Gooden's claims in the Second Amended Complaint be dismissed with prejudice. A with-prejudice dismissal is appropriate because Gooden has already filed three complaints. Under the circumstances, which include two amendments and one dismissal, the Court concludes that further amendments would be futile. *See, e.g.*, *Shields v. NYC Health & Hosps. Corp.*, 489 F. Supp. 3d 155, 167 (E.D.N.Y. 2020) (dismissing a *pro se* Title VII discrimination case with prejudice after a single prior dismissal); *Kelly v. N. Shore-Long Island Jewish Health Sys.*, 166 F. Supp. 3d 274, 290

(E.D.N.Y. 2016) (dismissing ADA employment discrimination claims with prejudice after a single prior dismissal).

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report.  Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[] [judge's] report operates as a waiver of any further judicial review of the magistrate[] [judge's] decision." (quotations omitted)).

Defendant is directed to serve a copy of this Report and Recommendation on Mr. Gooden and file proof of such service on the docket.

SO ORDERED.

*/s/Sanket J. Bulsara*  January 24, 2024
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York